UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF KENTUCKY
AT LOUISVILLE

WINCAN AMERICA, INC.                                                                              PLAINTIFF

v.                                                                          CIVIL ACTION NO. 3:09CV-103-S

ENVIROSIGHT, LLC, et al.                                                                      DEFENDANTS

## MEMORANDUM OPINION AND ORDER

This matter is before the court on the following motions:

1. CD Lab AG Multimedia Systems' ("CD Lab") motion for an order to show cause why WinCan America, Inc. (now Infrastructure Technologies, LLC)("WCA") should not be held in contempt of the injunction order entered by this court on June 10, 2009. (DN 69).

2. CD Lab's motion for leave to conduct limited discovery prior to any Rule 26 conference which may be conducted in this case. (DN 77).

3. WCA's motion seeking clarification of the scope of the court's injunction and for a stay of discovery pending the issuance of such clarification. (DN 98).

For the reasons stated herein, all three motions will be denied.

CD Lab is a Swiss developer of WinCan-brand software for the inspection of underground pipes by remote-controlled robots. CD Lab's WinCan software was previously sold, installed, and serviced exclusively by WinCan America, Inc. ("WCA") in the United States. WCA was formed specifically for the purpose of this exclusive distributorship. Beginning sometime in 2008, the relationship between the Swiss and American companies began to fail. Seeing the writing on the wall, WCA began developing its own inspection software now known as "IT Pipes." IT Pipes directly competes with the WinCan product.

Litigation ensued over the trademarks "WINCAN" and "WINCAN AMERICA," with this court ultimately deciding that CD Lab owned the marks. The court held a hearing on the motion of CD Lab for a temporary restraining order and preliminary injunction prohibiting WCA from using the "WINCAN" and "WINCAN AMERICA" trademarks in connection with the sale of WCA's own IT products. The court entered the requested injunction on June 9, 2009 against WCA and the usual litany of "agents, servants, representatives, employees, attorneys, parent corporations, subsidiaries, and all persons in active concert or participation with it or any of them." As a result, WCA has renamed itself Infrastructure Technologies, LLC. For simplicity, the court will continue to refer to it in this opinion as "WCA."

CD Lab seeks an order requiring WCA to show cause why it should not be held in contempt of the court's injunction. The injunction prohibits, in pertinent part:

> **WinCan America, Inc., its agents, servants, representatives, employees, attorneys, parent corporations, subsidiaries, and all persons in active concert or participation with it or any of them are hereby preliminarily restrained and enjoined from:**
>
> (1) Using in commerce the marks "WINCAN" and "WINCAN AMERICA,"...with the exception of required communications concerning WinCan software which has been provided for previously established sale or the installation or servicing thereof;
>
> (2) Making any statement or representation or using any false designation of origin or performing any act which can or is likely to lead the trade or public, or any individual member thereof, to believe that any products or services published, produced, promoted, advertised, displayed, distributed, offered for sale or sold by WinCan America, Inc. are in any way associated or connected with or sold, published, licensed, sponsored, approved or authorized by CD Lab AG Multimedia Systems, Inc., with the exception of required communications concerning WinCan software which has been provided for previously established sale or the installation or servicing thereof...

Injunction (DN 42).

Until the recent demise of their business relationship, CD Lab's "face" in the U.S. for the sale, installation and servicing of WinCan products was WCA. In seeking to protect its trademarks, CD Lab demanded a clear demarkation between WCA's servicing of WinCan products and WCA's sales of its own products.

The injunction entered by this court protects CD Lab from any blurring of the lines between WCA's old and new roles. However, CD Lab has chosen to remain entangled with WCA, for better or worse, with respect to the servicing of WinCan products already in the field. Now, as if seeing a "fox in the henhouse," CD Lab is dissatisfied with the activities of WCA in this dual role.

While possessing this dual capacity, WCA has been contacted by former and current customers who require servicing of WinCan products. These calls for service have occurred when there have been problems in the field with an existing WinCan product or when a customer sought to upgrade a product which was no longer meeting its needs. All of the customers to whom CD Lab referred in its motion are former or current customers of WCA.

CD Lab objects generally to WCA's offer of an option to service such customer with either WinCan products or an "upgrade" installation of IT Pipes. The injunction does not prohibit WCA from offering customers these options nor does it prohibit WCA from promoting its own product as the best option to meet a customer's needs. The injunction simply prohibits WCA from using CD Lab's marks so as to confuse the customer into believing that the IT Pipes product comes from CD Lab or is related to WCA's products.

CD Lab objects to what it terms as "posturing the IT products as a WinCan upgrade." This argument is misplaced. The duty of WCA in complying with the injunction is to avoid engendering

confusion as to the origin of its IT Pipes product. There is nothing which prohibits WCA from offering IT Pipes as an upgrade to a customer's current WinCan product as long as the customer is aware that the product it is not by the former WinCan America, Inc. or CD Lab. (DN 42, Temp. Restraining Order and Prelim. Inj.).

CD Lab appears to suggest that the injunction precludes WCA from making any reference to "WINCAN" or "WINCAN AMERICA." However, the injunction does not preclude all such references. The injunction precludes the use in commerce of the marks "*with the exception of required communications concerning WinCan software which has been provided for previously established sale or the installation or servicing thereof...*" Thus, in connection with servicing former customers, references to "WINCAN" and "WINCAN AMERICA" are permitted and in fact required to explain WCA's new identity and altered relationship with CD Lab.

In its reply brief, CD Lab points to a select portion of a March 24, 2010 e-mail from WCA to "Jason" to support its contention that WCA has created confusion in the marketplace by referring to "WINCAN" and "WINCAN AMERICA." A reading of the full paragraph referenced by CD Lab evidences that the marks are not being used to misrepresent the origin of products or the identity of WCA. The e-mail to "Jason"states in its concluding paragraph:

> Just to clarify based on your question, you can still purchase the Cdlab-wincan software. The main company selling the software is Envirosight, thru their sub-company, Pipeline Analytics. However, Patrick (Omega) and WinCan America do still support the software. All the people that worked for WinCan America are now employed at Infrastructure Technologies, so basically I.T. supports WinCan America for you, of course our goal is to move all clients over to I.T. pipes!

Thus WCA has explained that WinCan America did not simply drop its responsibility to support the WinCan products. It still does, using the name Infrastructure Technologies. It makes clear that

CD Lab's WinCan software is still available through another dealer, but it also, entirely permissibly, states that it would like to move all of its clients over to it's own products. This use of the marks does not violate the injunction. It is a necessary use in communications concerning servicing WinCan products and does not engender confusion, but rather seeks to dispel confusion which may exist.

WCA has been tasked with dismembering its fifteen-year WCA business identity. As the company is continuing in the industry as Infrastructure Technologies, in competition with CD Lab, it must actively avoid creating or perpetuating confusion as to the origin of its in-house products. However, it may still compete for business in the marketplace.

CD Lab's contentions are framed in generalities. It urges that WCA violated the injunction by "posturing its product 'IT Pipes' as a WINCAN upgrade, and by using the WINCAN mark in violation of the order." Motion for Show Cause Order, p. 2. Such generalized statements are insufficient to establish a violation of the injunction. CD Lab must come forward with facts establishing specific acts of contempt. CD Lab bears the "burden of establishing by clear and convincing evidence that [WCA] 'violated a definite and specific order of the court requiring [it] to perform or refrain from performing a particular act or acts with knowledge of the court's order.' [citation omitted]." *Rolex Watch U.S.A., Inc. v. Crowley*, 74 F.3d 716, 720 (6th Cir. 1996).

The evidence of alleged misconduct, offered through a declaration of Michael Russin, Advanced Account Manager for Pipeline Analytics, does not support a finding of contempt.

### City of Wooster

The first alleged violation of the injunction was not, in fact, an act committed by WCA at all. Rather, Telepipe Services, Inc. referred to "WINCAN IT" on an estimate and later on an invoice

for the sale of IT software to the City of Wooster, Massachusetts. Telepipe is an independent dealer, owned by Fred Cook, which sells both IT Pipes and WinCan products. The City of Wooster contacted Cook about upgrading a 2008 installation of WinCan software. Wooster contends that it was under the impression that the new software it had purchased was a WinCan product because Telepipe's estimate and invoice referenced "WINCAN IT." It is undisputed that after the entry of the injunction, Cori Criss, the owner of WCA, informed Cook that WCA was no longer permitted to use the "WINCAN" or "WINCAN AMERICA" marks, and that "WINCAN" could not be used in connection with the IT software. The Telepipe estimate is dated June 3, 2009, prior to the date of the injunction.[1]

Wooster did not submit a purchase order until January of 2010. Its purchase order referred to "WINCAN IT." In January, 2010 Criss again told Cook that no reference could be made to "WINCAN" in connection with "IT," and that it should make clear that the "I.T. Software Suite is a completely different product," and is not a "WINCAN product" in any communication with customers concerning IT. None of WCA's own estimates and invoices referenced "WINCAN" in connection with its IT product.

Telepipe does not dispute that "WINCAN IT" appeared on an estimate and was carried over to an invoice sent to Wooster, although it urges that it was a "clerical error" and was unintentional. Cook contends that despite the error in paperwork, he informed Wooster that IT Pipes was from a company unrelated to CD Lab. This point is contested. However, the purported confusion as to the origin of the IT software engendered by Telepipe's actions cannot form the basis for a finding of

---

[1] Telepipe provided the city with two estimates. One was for the purchase of the IT Pipes product. This estimate referred to "WINCAN IT" and allegedly caused confusion as to the origin of IT Pipes. The second estimate also used the term "WINCAN," but in connection with an estimate to repair or upgrade the existing WinCan components, so the use of the term "WINCAN" in this context was not only not a source of confusion, but was necessary to the communication.

contempt by WCA. Telepipe is an independent dealer who admittedly used the term "WINCAN IT" after the entry of the injunction. There is no evidence that Telepipe was acting at the direction of WCA. In fact, it appears that Telepipe acted in disregard of information repeatedly provided to it by WCA.

### City of El Cajon

With respect to contact with the City of El Cajon, the Russin declaration states that "customers have informed me of this conduct," and proceeds to relate that at some time the City of El Cajon called WCA for support with its WinCan product and was told to upgrade to the "new software." It received a quote (the court has not been provided with a copy of this document), but purportedly El Cajon was not told that the software was not a WinCan product.

In response, WCA has provided an e-mail to David Keltner sent by Criss on August 4, 2009 in response to the El Cajon inquiry in which she states "Definitely I'll be glad to be involved in a conference call...*Keep in mind that this is no longer a "wincan-brand" software as we stopped selling that brand back in February. This will actually be an upgrade to the inspectIT software or I.T. Software Suite.* If you have any questions on that, don't hesitate to call me or email me!" In the face of a document from WCA that directly refutes the hearsay report of affiant Russin, CD Lab's allegation appears to be pure fantasy.

### Matt Ankeny, Old Lycoming

The Russin affidavit relates that Russin heard that Telepipe sold Old Lycoming Township, Pennsylvania, a service contract to support WinCan V8. Telepipe allegedly provided Old Lycoming with old installs and incorrect video drivers that did not function properly. Allegedly Telepipe

eventually recommended that the customer upgrade the WinCan software with IT Pipes. Old Lycoming instead contacted Pipeline Analytics and its problems were solved.

First, this hearsay recitation, if it is of any value, relates an alleged improper act by Telepipe, not by WCA. Second, there is absolutely no suggestion of any improper use of CD Lab's marks or any act which engendered confusion as to the origin of WCA's IT product. Thus no violation of the injunction occurred.

### New York Department of Corrections ("NYDC")

The Russin affidavit relates that Russin heard that WCA sold a service contract to support the WinCan application at the NYDC and then "pushed for to [sic] upgrade WINCAN with IT Pipes." Russin Aff., p. 3.

Besides constituting rank hearsay, this allegation is bereft of the most basic facts of time, place or person. WCA goes to great lengths in its brief and the affidavits of Criss and Cook to establish that the servicing and support of NYDC in 2009 and 2010 was performed solely by Telepipe and CD Lab's then local dealer, Sewer Tech Services. In any event, there is nothing in the Russin affidavit which suggests a violation of the injunction. WCA has not been enjoined from competing with CD Lab, and it has not been enjoined from suggesting the superiority of its own product.

### Houston and Harris, California

Again, Russin avers that he heard that WCA was hired by Houston and Harris to provide customized modules for WinCan V8, but that WCA told Houston and Harris that it had to buy IT Pipes because WinCan was no longer being supported in North America. Houston and Harris then

- 8 -

allegedly contacted Pipeline Analytics and its issues were resolved without any investment in new software.

In response to this accusation, WCA contacted its long-time principal contact at Houston and Harris, Sergio Mora, and related the allegations offered in the Russin affidavit. Mora responded in e-mail, denying that Houston and Harris ever contacted WCA about customized modules and denying that he was ever misled concerning the origin of IT Pipes. He also stated that he was well aware that he could obtain support for WinCan products, as that information appears on the CD Lab website.

Russin's declaration with respect to Houston and Harris appears to be a complete fabrication. Thus CD Lab's allegation on this point is without merit.

In summary, CD Lab's motion seeking to have this court hold WCA in contempt is unsupported by any substantive facts showing a violation of this court's injunction. Rather, it appears to constitute an attempt to squelch competition in the marketplace. We will deny the motion.

Therefore, **IT IS HEREBY ORDERED AND ADJUDGED** that

1. Counterclaim Plaintiff's Motion for Order to Show Cause Why Counterclaim Defendant Should Not Be Held in Contempt of Injunction Order (DN 69) is **DENIED.**

2. CD Lab AG Multimedia Systems' Motion for Leave to Conduct Limited Discovery Prior to Rule 26 Conference (DN 77) is **DENIED.**

3. Plaintiff/Counterclaim Defendant WinCan America Inc.'s Motion for the Court's Clarification of Scope of Temporary Restraining Order and Preliminary Injunction and for Stay of Discovery Pending Same (DN 98) is **DENIED AS MOOT.**

**IT IS SO ORDERED.**

July 22, 2011

**Charles R. Simpson III, Judge
United States District Court**